UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY SMITH, Individually and as Special Administrator of the Estate of JAMES PEREA,<br><br>Plaintiff(s),<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>Defendant(s). | Case No. 2:23-cv-00092-JAD-NJK<br><br>**REPORT AND RECOMMENDATION**<br><br>[Docket No. 80] |

Pending before the Court is Plaintiff's motion to modify the scheduling order and to amend the pleadings to add Christy Snapp as a Defendant. Docket No. 80. Defendants filed a response in opposition. Docket No. 84. Plaintiff filed a reply. Docket No. 88. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the undersigned **RECOMMNEDS** that Plaintiff's motion be **DENIED**.

**I.    BACKGROUND**

This case involves constitutional claims arising out of the death of James Perea while in custody at the Clark County Detention Center. *See* Docket No. 10.[1]

On October 18, 2022, Plaintiff received initial disclosures identifying "Officer C. Snapp, P7226" as having "knowledge of the facts and circumstances surrounding the subject event as well as the allegations set forth in the complaint." Docket No. 84-1 at 12, 19. The initial disclosures also including documentation regarding the officers on duty during the alleged incident, including a schedule showing that "Snapp, Christy 7266" was staffing the "2C video," Docket No. 84-4 at 2, that "Officer Christy Snapp, P#7226" was one of the commissioned staff involved in the alleged

---

[1] Plaintiff previously filed the same case in this District. *See Smith v. Las Vegas Metro. Police Dept.*, No. 2:22-cv-00981-JCM-EJY (D. Nev.). After that case was dismissed without prejudice, Plaintiff instituted this action.

1

incident, Docket No. 84-3 at 2, and that "Officer C. Snapp, P# 7226" physically responded to the situation and made entry into the cell, Docket No. 84-2 at 3.

On October 30, 2023, Plaintiff identified Christy Snapp as Plaintiff's own non-retained expert. Docket No. 84-12 at 5, 8. On or about November 28, 2023, Plaintiff received a rebuttal expert report highlighting the role of the video monitoring officer (though not naming the person as Christy Snapp) during the alleged incident. Docket No. 84-14 at 11.

On June 20, 2023, the Court entered a scheduling order setting the deadline to amend the pleadings or add parties for August 1, 2023. Docket No. 37. Though other deadlines were subsequently extended, the deadline to amend the pleadings or add parties was not. *See, e.g.*, Docket No. 45 at 4. Plaintiff sought to add Christy Snapp as a Defendant on February 19, 2024. Docket No. 60.[2] Discovery is closed. *See* Docket No. 86 at 1; *see also* Docket No. 94.

## II.  STANDARDS

When a party moves to amend the pleadings after the expiration of the deadline established in the scheduling order, courts review the motion through a multi-step process. As a threshold matter, courts treat the motion as seeking to amend the scheduling order. Such a request implicates the "good cause" standard outlined in Rule 16(b) of the Federal Rules of Civil Procedure. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609. In particular, courts look to whether the deadline set in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* The diligence inquiry also addresses other pertinent circumstances, including whether the movant was prompt in seeking relief from the Court once it became apparent that relief from the scheduling order was needed. *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citing *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996)). Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reasons for seeking modification. *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end."

---

[2] Because of several procedural hiccups, *see* Docket Nos. 61, 79, the pending motion was eventually renewed on May 10, 2024, *see* Docket No. 80. In terms of the diligence analysis herein, the undersigned will give Plaintiff the benefit of the earlier filing date.

*Id.* The party seeking amendment bears the burden of establishing diligence. *See Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019); *see also Morgal v. Maricopa County Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012).[3]

A motion for leave to amend filed after the expiration of the corresponding deadline also requires a showing of excusable neglect. *See Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017); *see also* Local Rule 26-3. The excusable neglect analysis is guided by factors that include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Branch Banking*, 871 F.3d at 765. The party seeking amendment bears the burden of establishing excusable neglect. *See id.* (affirming finding of no excusable neglect based upon the movant's failure to provide a sufficient showing).

When the movant establishes a sufficient basis for obtaining relief from the governing case management deadline, courts then examine whether amendment is proper under the standards outlined in Rule 15(a). Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires," and there is a strong public policy in favor of permitting amendment.

---

[3] Although the Ninth Circuit has expressed the need for leniency with respect to certain deadlines in other contexts, it has been "protective of this particular rule, as it deems Rule 16 to be an essential tool in controlling heavy trial court dockets." *Williams v. James River Grp. Inc.*, 627 F. Supp. 3d 1172, 1177 n.3 (D. Nev. 2022) (quoting *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273-LJO-BAM, 2013 WL 645741, at *4 (E.D. Cal. Feb. 21, 2013)); *see also Martinez-Sanchez v. Anthony Vineyards, Inc.*, No. 1:19-cv-01404-DAD-JLT, 2021 WL 1696274, at *6 (E.D. Cal. Apr. 29, 2021). Decades of Ninth Circuit precedent reflect that case management deadlines established in the scheduling order, including the deadline to amend, must be taken seriously. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("The use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one"); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines"); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) ("We have held that Federal Rule of Civil Procedure 16 is to be taken seriously"); *Johnson*, 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier" (internal citation and quotations omitted)).

*Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended the complaint. *See id.* at 1052. Not all of these factors carry equal weight and prejudice is the "touchstone." *Id.* Absent a showing of prejudice or a strong showing of any of the remaining factors, there is a presumption that leave to amend should be granted. *Id.* The party opposing the amendment bears the burden of showing why leave should not be permitted under Rule 15(a). *Underwood v. O'Reilly Auto Enters., LLC*, 342 F.R.D. 338, 343 (D. Nev. 2022).

**III.   ANALYSIS**

As noted above, Plaintiff first sought to add Christy Snapp as a Defendant 202 days after the expiration of the deadline to do so. *See* Docket No. 37; Docket No. 60. Hence, Plaintiff must as a threshold matter obtain relief from the case management deadlines. The undersigned agrees with Defendants that Plaintiff has not established good cause to modify the governing case management deadline pursuant to Rule 16(b).[4]

The deadline to amend expired on August 1, 2023. Docket No. 37. Many months earlier in 2022, Plaintiff received initial disclosures identifying "Officer C. Snapp, P7226" as having "knowledge of the facts and circumstances surrounding the subject event as well as the allegations set forth in the complaint." Docket No. 84-1 at 12, 19. The initial disclosures also included documentation regarding the officers on duty at the time and date of the alleged incident, including a schedule showing that "Snapp, Christy 7266" was staffing the "2C video," Docket No. 84-4 at 2, that "Officer Christy Snapp, P#7226" was one of the commissioned staff involved in the incident, Docket No. 84-3 at 2, and that "Officer C. Snapp, P# 7226" physically responded to the

---

[4] In light of this finding, the undersigned will not address whether excusable neglect was established to reopen the governing case management deadline or whether grounds for amendment exist for purposes of Rule 15.

4

situation and made entry into the cell, Docket No. 84-2 at 3. On July 28, 2023, Plaintiff received video footage showing Snapp during the alleged incident. *See* Docket No. 84-6 at 20.

Despite being supplied with this information, Plaintiff represents that Snapp's role in the alleged incident was not "abundantly clear" until much later after a more recent deposition testimony and document production. *See, e.g.*, Docket No. 80 at 13. Plaintiff also accuses the defense of purposefully obscuring Snapp's alleged role to thwart the ability to name Snapp as a Defendant. *See, e.g.*, *id.*

The undersigned is not persuaded that Plaintiff has shown diligence. As noted above, Plaintiff was put on notice of Snapp's involvement in the alleged incident many months ago. Despite the record reflecting the receipt of that information, Plaintiff appears to be attempting to shift the burden onto the defense to identify all potential defendants. *But see, e.g.*, *Gonzalez v. Diamond Resorts Int'l Mrktg., Inc.*, 2020 WL 4925702, at *6 n.12 (D. Nev. Aug. 21, 2020) ("Of course, pointing to a defendant's obstructive behavior only gets a plaintiff so far, as the plaintiff ultimately bears the responsibility for advancing the case"). At any rate, the papers have not established that the defense skirted their disclosure or discovery obligations.[5] On the other hand, the defense disclosures more than suffice to identify Snapp and Snapp's potential role in the incident. While Plaintiff bemoans that references such as "3C video" are simply too cryptic to appreciate Snapp's full significance, *see, e.g.*, Docket No. 80 at 10; Docket No. 88 at 7, it was the

---

[5] Plaintiff's attempts to show a disclosure or discovery violation are predicated on suspicion, assumption, and innuendo. Plaintiff makes much of the fact that Snapp was allegedly misgendered in initial disclosures, *see, e.g.*, Docket No. 80 at 7, but the insinuation that the pronoun usage was an attempt to hide Snapp's identity is belied by the contemporaneous document disclosures providing Snapp's full name, *see, e.g.*, Docket No. 84-4 at 2. Plaintiff highlights that a disclosure indicated that there were "no discrepancies" in the video recording, *see, e.g.*, Docket No. 80 at 9, but the undersigned concurs with the defense that "there is no basis to construe the reference to 'discrepancies' as referring to anything other than multiple surveillance videos recording correctly," *see* Docket No. 84 at 16 n.7. Plaintiff highlights that an Internal Affairs Bureau report examining Snapp's role in the alleged incident was not produced until February 1, 2024, *see, e.g.*, Docket No. 80 at 7, but Plaintiff has not shown that the production of that report was untimely. The closest Plaintiff gets to doing so is stating in reply that the IAB report "surely" was responsive to a request for "Case Reports" regarding Perea's death. *See* Docket No. 88 at 8; *see also* Docket No. 80-2 at 6. It is not self-evident to the undersigned, however, that the IAB report is a "Case Report" and *ipse dixit* does not persuade the undersigned that it is one. *Cf. Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013) (courts do not generally consider arguments raised without meaningful development).

5

duty of Plaintiff to probe in a diligent manner such references so that Snapp's significance was sufficiently clear.[6] Similarly, Plaintiff asserts that Snapp was not known to be one of the persons in the surveillance video when it was produced, *see, e.g.*, Docket No. 80 at 10 & n.3, and Plaintiff's counsel was "under the impression" that only uniformed officers were on duty, Docket No. 88 at 7,[7] but Plaintiff fails to show diligent efforts to identify that person or to confirm the assumptions apparently made by counsel. Waiting until late in the discovery period to fill in these types of blanks is antithetical to the diligence required to modify the governing case management deadline to amend or add parties many months after it expired. In short, diligence has not been shown pursuant to Rule 16, so the motion for leave to amend fails.

Because Plaintiff has not established the diligence necessary to modify the governing case management deadline,[8] Plaintiff cannot add a new defendant at this late date.[9]

---

[6] Plaintiff is currently attesting to having no reasonable clue as to Snapp's alleged role in the underlying incident until earlier this year despite <u>Plaintiff months earlier identifying Snapp as a non-retained expert for trial</u>, Docket No. 84-12 at 5 (disclosures made on October 30, 2023). Plaintiff attempts to explain away that prior designation as merely a placeholder that was made without any real factual basis. *See* Docket No. 80 at 8 n.2. Making disclosures without a factual basis would defeat the purpose of those disclosures and would be very troubling. *Cf.* Fed. R. Civ. P. 11; Fed. R. Civ. P. 26(g). At a minimum, however, Plaintiff's own disclosure shows that the *potential* significance of Snapp was known to Plaintiff early on, which begs the question of what steps were undertaken by Plaintiff to fill in that factual picture in diligent fashion.

[7] Plaintiff's counsel "presumed" that the non-uniformed person "must have been a friend of the on-duty officers keeping them company during their late-night shift." Docket No. 88 at 8.

[8] Defendants also argue prejudice, *see, e.g.*, Docket No. 84 at 17, which can provide an additional ground for refusing to modify the case management schedule, *Johnson*, 975 F.2d at 609. It seems plain that allowing this late amendment would require reopening discovery and delaying proceedings, which would be prejudicial. *See, e.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).

[9] The undersigned is cognizant of the weighty issues alleged in the complaint, which resulted in a death. Nonetheless, controlling Ninth Circuit authority makes plain that, "the inquiry should end" when the movant was not diligent. *Johnson*, 975 F.2d at 609. Moreover, the undersigned notes that Plaintiff continues to have active claims with respect to other Defendants.

## IV.     CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Plaintiff's motion to modify the scheduling order and to amend the pleadings to add Christy Snapp as a Defendant be **DENIED**.

Dated: July 29, 2024

_____
Nancy J. Koppe
United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).